## TRACY GABLER v. TOWNSHIP OF BERTHA.[1]

December 31, 1926.

No. 25,683.

**Award to dependents of grader of town road over railroad crossing sustained.**

In a proceeding under the Workmen's Compensation Act, the Industrial Commission found that the deceased, while engaged in grading a town road, was an employe of the relator, and *held* that his dependents were entitled to compensation under the act. The evidence supports the finding and justifies the conclusion that the town board had authorized the work to be done and, in having the road graded over the railroad crossing at the expense of the railroad company, was acting within the scope of its authority.

Constitutional Law, 12 C. J. p. 864 n. 83, 86.
Railroads, 33 Cyc. p. 273 n. 80; p. 278 n. 30.
Towns, 38 Cyc. p. 637 n. 3.
Workmen's Compensation Acts,—C. J. p. 115 n. 37.

---

See note in L. R. A. 1918F, 179.

[1]Reported in 211 N. W. 477.

Certiorari to review the order of the Industrial Commission awarding compensation in a proceeding under the Workmen's Compensation Act. Affirmed.

*Constant Larson,* for relator.

*Mark & Barron,* for respondent.

LEES, C.

The relator obtained a writ of certiorari to review the decision of the Industrial Commission awarding compensation to the respondent, whose husband was fatally injured while working on a public highway in the town of Bertha.

As we view it, but one question is presented: Was the deceased an employe of the town when he lost his life? The referee found that he was, and a majority of the commission were of the opinion that the finding was supported by the evidence and adopted it.

The evidence is in conflict in many particulars, but the commission could properly find that the facts were substantially as follows: A town road crosses the tracks of the Great Northern railway near the village of Bertha. In June, 1925, the road was graded up to the east and west boundary lines of the railroad right of way. This left the crossing in bad condition and travelers complained to the town officials. Joseph Lind was a member of the town board and William Lehman was the road overseer employed by the board. The grading had been done under their supervision. On June 22nd the board adopted a resolution reading as follows: "Moved and seconded to leave Joe Lind to settle with the railroad in filling crossing by Lehman's corner."

Lind called on R. G. Burt, the station agent at Bertha, and told him that the town wanted the railroad company to put the road over the crossing in proper condition for travel. Burt communicated with J. B. Mooney, the railroad roadmaster. He came to Bertha on July 4th and met Lind and Lehman. Mooney and Lind agreed tentatively that the town should finish the grading, the railroad company to pay the cost thereof, estimated at $75. Mooney obtained authority to have the work done by the town, the cost to the com-

pany not to exceed $75. This was made known to Lehman and reported by him to Lind. They called on Burt, who told them that he had a telegram to Mooney from the railroad company's superintendent authorizing Mooney to have the work done by the town on the terms above mentioned. There was some talk about a written contract. Burt said it was unnecessary and that the work would be delayed if it were not done until after one was procured. Lind then told Lehman to proceed with the work.

The deceased had worked on the road in June. Late in August Lehman re-employed him with other men to finish the job. The men worked under Lehman's supervision and the town's machinery and implements were used. A portion of another town road west of and near the railroad was graded at the same time, the earth taken therefrom being used to fill in the crossing. Lehman kept the time of the men on time slips used by the town, but after the accident the slips were sent to the railroad company and it was asked to pay the wages of the men, but refused to do so.

The minutes of a meeting of the town board held August 4, 1925, recite that Lind reported that he could not get a contract from the Great Northern. They also recite that the town clerk was instructed to get one. The minutes of a meeting held September 1st recite that Lind reported that he had not secured a contract but understood that the company would pay the men by the day. The evidence would support a finding that the men supposed they were working for the town and not for the railroad company. Neither Lind nor Lehman claimed that he was individually engaged in doing the work.

This in substance is the evidence upon which the respondent rests her claim. We think it sufficient to support the finding that the deceased was an employe of the town.

It was the duty of the railroad company to maintain the crossing. G. S. 1923, § 4734. But the town board had authority to have the work done at the expense of the company. G. S. 1923, § 4739.

The meaning of the word "settle" as used in the resolution of June 22nd is not clear. Considered in the light of the existing circumstances and Lind's subsequent acts, we think the board intended

to authorize Lind to have the unfinished grading completed over the crossing and to obtain payment of the cost thereof from the railroad company.

Much is made of the fact that there was no written contract between the town and the company. Possibly the town could not have been held for damages if it had failed or refused to do the work after Lind and Mooney came to terms. As a general rule, a town is not bound by a contract not authorized at a meeting of the board, Reed v. Township of Monticello, 164 Minn. 358, 205 N. W. 258; and it is also a rule of general application that the exercise of judgment and discretion cannot be delegated by the governing body of a municipal or quasi-municipal corporation, although the performance of acts of a purely ministerial nature may be delegated. Jewell Belting Co. v. Village of Bertha, 91 Minn. 9, 97 N. W. 424; McQuillin, Mun. Corp. § 387.

We will assume, for the purpose of this discussion, that to agree with the railroad company upon the price to be paid for the work involved the exercise of judgment and discretion, but that does not dispose of the vital question in the case. The statute makes it the duty of town boards to construct, repair and maintain town roads, G. S. 1923, § 2552, and it is held that the acts of a town board, within the general scope of the powers of the board, are the acts of the town, Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N. W. 222, and that the supervisors are the agents of the town and the town is liable for their acts unless they were illegal or unauthorized. Kreger v. Bismarck Township, 59 Minn. 3, 60 N. W. 675.

A town board is not obliged to go in a body to supervise the grading of a road. Supervision of the work calls for ministerial action only. The work was authorized at the meeting of the town board on June 22nd and thereafter it was only necessary to see that it was properly done.

The evidence tends to show that the deceased was hired by Lehman to work for the town and not for the railroad company. He was not obliged to inquire into Lind's or Lehman's authority to have the work done. A workman, employed as was deceased, does

not run the risk of losing the benefits of the compensation act if he is mistaken as to the law relative to the powers of a town board acting in good faith in a matter intrusted to its care. Any rule to the contrary would be unreasonable and impracticable.

Whether the deceased was an employe of the town was a pure question of fact upon which the evidence was in conflict. We follow the familiar rule that the determination by the Industrial Commission of disputed questions of fact will be sustained if, upon an impartial consideration of the evidence and the inferences which may fairly be drawn therefrom, reasonable minds might reach different conclusions. See Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009, and Walker v. Minn. Steel Co. 167 Minn. 475, 209 N. W. 635, where the latest cases are cited.

Compensation was rightly awarded to the dependents of the deceased and the decision of the commission is affirmed, with an allowance of $100 attorney's fees to the respondent.